UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERTA M. LILLY, | No. 2:24-cv-1504 AC |
| Plaintiff, | |
| v. | **ORDER** |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-34.[1] For the reasons that follow, plaintiff's motion for summary judgment will be GRANTED, and defendant's cross-motion for summary judgment DENIED.

## I. PROCEDURAL BACKGROUND

Plaintiff applied for DIB on January 11, 2016, alleging disability beginning August 26, 2015.  AR 29.[2]  The application was disapproved initially on May 3, 2016, and after

---

[1] DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and who suffer from a mental or physical disability.  42 U.S.C. § 423(a)(1); Bowen v. City of New York, 476 U.S. 467, 470 (1986).
[2] Two copies of the AR are electronically filed, collectively as ECF No. 8 (AR 1 to AR 1389).

1

reconsideration on July 13, 2016. Id. On February 1, 2018, ALJ Vincent Misenti presided over the telephonic hearing on plaintiff's challenge to the disapprovals. AR 52-78 (transcript). Plaintiff, who appeared with LoAnn Wood as counsel, testified at the hearing. AR 52, 56. Lisa Suhonos, a Vocational Expert ("VE"), also testified. AR 52, 73.

On June 26, 2018, the ALJ found plaintiff "not disabled" as of plaintiff's January 11, 2016 application date under sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d). AR 29-39 (decision), 40-44 (exhibit list). On December 26, 2018, after receiving Exhibit 28B, a Request for Review dated August 21, 2018, and Exhibit 27B, an Appeals Council Review dated October 16, 2018, as exhibits, the Appeals Council found that plaintiff became disabled on June 26, 2018. AR 747-51 (decision and additional exhibit list). The Appeals Council based this decision in part on the fact that on the date of the ALJ's original decision, plaintiff was one month away from changing age category from "approaching advanced age" to "advanced age." AR 748.

On May 2, 2019, Lilly sought judicial review of the Appeals Council's decision in Lilly v. Saul, Case No. 2:19-CV-0781-AC ("Lilly I"). AR 853-56 (docket), 1086-103 (plaintiff motion for summary judgment). On August 20, 2020, pursuant to the parties' stipulation, the undersigned remanded the matter to the Commissioner for further proceedings. AR 770-73, 856. The Appeals Council agreed to instruct the ALJ:

> to further evaluate whether Plaintiff performed substantial gainful activity during the period at issue; reconsider Plaintiff's residual functional capacity; further evaluate the opinion evidence from the treating and nontreating sources; if warranted, seek supplemental vocational expert evidence to determine whether there are a significant number of jobs in the national economy that Plaintiff can perform; conduct the further proceedings required to determine if Plaintiff's substance use is a contributing factor material to a finding of disability; give Plaintiff an opportunity for a hearing; and issue a new decision for the period prior to the established onset date of June 26, 2018. The Appeals Council will affirm that plaintiff is disabled since at least June 26, 2018.

AR 770-71.

The Appeals Council entered such an order on September 21, 2020, requiring the ALJ to offer plaintiff a hearing on these issues. AR 778-79. Although ALJ Misenti held a hearing to this effect on January 21, 2021, the recording for this hearing was inaudible. AR 693. Accordingly,

ALJ Misenti held another hearing on December 2, 2021. AR 961-73 (transcript). VE Fran Fabian testified at this hearing. AR 961-62, 968.

On December 29, 2021, ALJ Misenti found plaintiff "not disabled" from August 26, 2015 to June 25, 2018. AR 787-802, 1121-36 (decision). This decision referenced only the hearing on January 21, 2021. AR 787, 1121.

On April 22, 2022, plaintiff sought judicial review of the decision in Lilly v. Commissioner of Social Security, Case No. 2:22-cv-00704-KJN ("Lilly II"). AR 811. On November 17, 2022, pursuant to the parties' stipulation, Magistrate Judge Kendall Newman remanded the matter for further development of the record. AR 814-15.

Accordingly, on January 4, 2023, the Appeals Council remanded the matter with instructions for the ALJ to offer plaintiff another hearing and include the full procedural history, including the December 2021 hearing, with specificity in any subsequent decision. AR 820-21. ALJ Trevor Skarda presided over the hearing on November 6, 2023. AR 716-23 (transcript). Plaintiff, Jeffrey Milam as counsel, and VE Lynda Berkley appeared at the hearing, but no one testified. Id. On January 23, 2024, ALJ Skarda found plaintiff "not disabled" from August 26, 2015 to June 25, 2018. AR 693-707 (decision), 708-15 (exhibit list).

Plaintiff filed this action on May 28, 2024. ECF No. 1; see 42 U.S.C. § 405(g). The parties consented to the jurisdiction of the magistrate judge. ECF Nos. 7, 13-14. The parties' cross-motions for summary judgment, based on the Administrative Record filed by the Commissioner, have been briefed. ECF Nos. 16 (plaintiff's summary judgment motion), 22 (defendant's summary judgment motion). Plaintiff also filed a reply brief on February 20, 2025. ECF No. 23.

## II. FACTUAL BACKGROUND

Plaintiff was born on July 25, 1963, and accordingly was, at age 52 as of her alleged onset date and age 54 as of June 25, 2018, a person closely approaching advanced age under the regulations during the period at issue. AR 302, 706; see 20 C.F.R. § 404.1563(d). Plaintiff has a high school education and can read and write simple messages in English. AR 277, 304. She worked as a forklift operator at a warehouse from January 1984 to August 2015. AR 278.

Reported medical conditions include anxiety, depression, asthma, rheumatoid arthritis, high cholesterol, and shoulder, foot, and knee surgery.  AR 276.

### III.  LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003).  "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'" Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." Molina v. Astrue, 674 F.3d 1104, 1110-11 (9th Cir. 2012).  "It means such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted).  "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted). Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Secretary of HHS, 846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).  However, the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on

evidence that the ALJ did not discuss").

The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Commissioner, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## IV.  RELEVANT LAW

DIB is available for every eligible individual who is "disabled." 42 U.S.C. § 402(d)(1)(B)(ii). Plaintiff is "disabled" if she is "'unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment . . ..'" Bowen v. Yuckert, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits. 20 C.F.R. § 404.1520(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

20 C.F.R. § 404.1520(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, the claimant is not disabled.

Id. §§ 404.1520(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is disabled. If not, proceed to step four.

Id. §§ 404.1520(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity [RFC] make him capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

Id. §§ 404.1520(a)(4)(iv), (e), (f).

5

> Step five: Does the claimant have the residual functional capacity perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Id. §§ 404.1520(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. 20 C.F.R. §§ 404.1512(a) ("In general, you have to prove to us that you are blind or disabled"), 416.912(a) (same); Bowen, 482 U.S. at 146 n.5. However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Bowen, 482 U.S. at 146 n.5.

## V. THE ALJ's DECISION

The ALJ made the following findings:

> 1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2020.
>
> 2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of August 26, 2015 to June 25, 2018 (20 CFR 404.1571 et seq.).
>
> 3. From August 26, 2015 to June 25, 2018, the claimant had the following severe impairments: anxiety; depressive disorder; personality disorder; rheumatoid arthritis; asthma; methamphetamine addiction (20 CFR 404.1520(c)).
>
> 4. From August 26, 2015 to June 25, 2018, the claimant's drug addiction precluded the claimant from performing her past relevant work or any other work existing in the national economy.
>
> 5. From August 26, 2015 to June 25, 2018, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 6. After careful consideration of the entire record, the [ALJ found], from August 26, 2015 to June 25, 2018, when she is not abusing methamphetamine, the claimant had the residual functional capacity [RFC] to perform light work as defined in 20 CFR 404.1567(b) except she can lift, carry, push or pull up to 20 pounds occasionally, 10 pounds frequently. She can sit, stand or walk up to six hours each. She can occasionally reach over head with the bilateral upper extremities. She can never climb ladders, ropes or scaffolds. She can occasionally climb ramps or stairs, balance, stoop, kneel, crouch and crawl. She can never work at unprotected heights. She should avoid concentrated exposure to moving, mechanical parts, and to

dust, odors, gases, fumes and pulmonary irritants. She is able to perform simple, routine and repetitive tasks. She is able to occasionally interact with supervisors, coworkers and the public.

7. From August 26, 2015 to June 25, 2018, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

8. The claimant was born on July 25, 1963 and was 52 years old on her alleged onset date and 54 years old on June 25, 2018, which is defined as an individual closely approaching advanced age (20 CFR 404.1563).

9. The claimant has at least a high school education (20 CFR 404.1564).

10. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568).

11. From August 26, 2015 to June 25, 2018, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a).

12. The claimant was not under a disability, as defined in the Social Security Act, at any time from August 26, 2015 to June 25, 2018 (20 CFR 404.1520(g)).

AR 696-707.

As noted, the ALJ concluded that plaintiff was "not disabled" during the disputed period under Title II of the Act. AR 707.

## VI. ANALYSIS

### A. The ALJ Did Not Adequately Analyze Opinion Evidence on Physical Impairment

#### 1. The Medical Opinion Evidence

On April 19, 2016, Dr. Satish Sharma examined plaintiff on the Department of Social Service's behalf. AR 551, 556. At the time of her examination, plaintiff was alert and showed no signs of acute distress. AR 553. She walked with a limp and could not walk from toe to heel, but did not use an assistive device. AR 554. Dr. Sharma did not find any signs of tenderness in the neck, chest or abdomen. AR 553-54. The straight-leg raising test was negative, and no muscle spasm was noted. AR 554. Dr. Sharma also noted 5/5 strength in all extremities, intact sensation, and good muscle tone. AR 554.

There was tenderness, however, in the lumbar spine, the paravertebral region, the

superolateral aspect of both shoulders, and both knees. AR 554. Plaintiff reported pain on abduction of the left shoulder at 120 degrees and the right at 140 degrees. AR 554. Dr. Sharma also noted that plaintiff reported back pain on both "forward flexion at 60 degrees and extension [at] 20 degrees." AR 554. The pain in the left knee occurred on flexion of the left knee at 20 degrees less than the right. AR 554. The left foot had surgical scars and was deformed, with the great toe resting over the second toe and additional tenderness to palpation on the dorsolateral aspect of that foot. AR 554.

Dr. Sharma concluded that plaintiff could lift up to 10 pounds frequently and 20 pounds occasionally, stand and walk up to two hours per day with normal breaks, and only occasionally climb stairs and ramps, kneel, bend, stoop, crouch, or reach overhead. AR 555. Dr. Sharma also limited plaintiff to six hours of sitting per day. AR 555. The VE testified during the hearing that if a hypothetical individual with plaintiff's other limitations could only sit for up to six hours and stand for up to two, the individual could not perform the jobs he previously identified without reasonable accommodations from the employer. AR 75-76.

The RFC incorporates every part of Dr. Sharma's recommendation except for limits on sitting or standing, instead allowing plaintiff to "sit, stand or walk up to six hours each." AR 700. The ALJ acknowledged signs of "degenerative joint disease in the bilateral knees" but found that the evidence does not show plaintiff was as limited as Dr. Sharma suggested. AR 704.

2. <u>Governing Legal Principles</u>

In evaluating medical opinion evidence for claims filed before March 27, 2017, an opinion from a treating source receives controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2). A treating source is an acceptable medical source with an "ongoing treatment relationship" with the plaintiff, based on whether the frequency of visits to that source are consistent with accepted medical practice for the type of treatment or evaluation required for the relevant medical condition. 20 C.F.R. §§ 404.1527(a)(2). If a source is not given controlling weight, the ALJ must consider (1) whether the source personally examined the plaintiff; (2) the treatment relationship the source has with the plaintiff;

8

(3) to what extent the source presented "relevant evidence to support a medical opinion, particularly medical signs and laboratory findings[;]" (4) to what extent this opinion is consistent with the rest of the medical record; (5) whether the impairment at issue relates the source's area of specialization; and (6) any other fact that tends to support or contradict the medical opinion, whether brought by a party to the ALJ's attention or considered *sua sponte*. 20 C.F.R. § 404.1527(c). The treatment relationship is then based on the length of the relationship, frequency of examinations, and nature and extent of the treatment relationships. 20 C.F.R. § 404.1527(c)(2)(i)-(ii).

Under this framework, the Ninth Circuit distinguishes between treating physicians, examining physicians who do not treat the patient, and nonexamining physicians. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). A treating doctor's opinion can only be rejected for "'clear and convincing' reasons" when uncontradicted by another opinion. Id. (quoting Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir.1991)). When another doctor contradicts the treating doctor's opinion, the ALJ must still articulate "'specific and legitimate reasons' supported by substantial evidence in the record" when rejecting the opinion. Lester, 81 F.3d at 830 (quoting Murray v. Heckler, 722 F.2d 499, 502 (9th Cir.1983)). The same applies to the opinion of an examining doctor. Lester, 81 F.3d at 830-31. In contrast, a nonexamining opinion, even when combined with an ALJ's personal observations of a plaintiff, cannot alone constitute the substantial evidence needed to reject a treating or examining opinion. Id. at 831.

### 3. The ALJ Inadequately Discussed Dr. Sharma's Opinion on Standing or Sitting

Plaintiff argues that the ALJ failed to provide specific and legitimate reasons for rejected the relevant part of Dr. Sharma's opinion. ECF No. 16 at 17. She notes that Dr. Sharma's observations regarding plaintiff's deformed left foot, tenderness therein, and her inability to walk heel-to-toe support the assertion that a crush injury on that foot prevents her from walking. ECF No. 16 at 18. Plaintiff also asks how limited flexion in each knee and tenderness to palpation contradict the opinion. ECF No. 16 at 18.

Defendant argues that the ALJ did support his holding by analyzing consistency and supportability, the two factors most relevant to his decision. ECF No. 22 at 7 (citing 20 C.F.R. §

404.1527(c)(3)-(4)).  The ALJ referenced Dr. Sharma's findings of good muscle tone, 5/5 strength in all extremities, intact sensation, and plaintiff not needing an assistive device during her examination.  ECF No. 22 at 7 (citing AR 702).  The ALJ also noted numerous other occasions that plaintiff walked without a cane and demonstrated a full range of motion in her extremities.  ECF No. 22 at 7 (citing AR 506, 701-03, 1330).  The ALJ did not, however, specify what portions of the record undermined Dr. Sharma's conclusions.

In defending the ALJ's decision, defendant cites to the portion of the step four analysis that explains why he discounted plaintiff's subjective testimony.  See AR 701 ("claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with… evidence in the record for the reasons explained").  This section summarizes plaintiff's complete treatment and examination history, with both evidence that favors a more limited RFC and evidence that favors a broader RFC.  See generally AR 701-02.  The ALJ reiterates Dr. Sharma's finding of good muscle tone and 5/5 extremity strength, for example, right after acknowledging that she found plaintiff's knees were tender and had a reduced range of motion.  AR 702.  How this section justifies discounting Dr. Shrama's opinion two pages later is unclear.

Poor organization of written thought does not always justify reversal of an ALJ holding.  Even when an administrative decision is explained "with 'less than ideal clarity,'" a reviewing court "must uphold it 'if the agency's path may reasonably be discerned.'"  Molina, 674 F.3d at 1121 (quoting Alaska Dep't of Envtl. Conservation v. EPA, 540 U.S. 461, 497 (2004) (quoting Bowman Transp., Inc. v. Arkansas-Best Freight Sys., 419 U.S. 281, 286, (1974))).  However, a decision that summarizes various pieces of medical evidence (AR 701-03), summarily concludes that "the evidence does not support a [source's] conclusion" in one paragraph a few pages later (AR 704), and moves on to the next source (id.) does not meet this standard.  Defendant claims the ALJ analyzed the consistency and supportability of Dr. Sharma's opinion, yet the court cannot discern why exactly the ALJ believed that either factor disfavors her conclusion.  ECF No. 22 at 7.  Although the evidence defendant cites could support the ALJ's decision, this court cannot uphold the decision based on *post hoc* rationale not actually used by the ALJ.  Molina, 674 F.3d

at 1121 (citing SEC v. Chenery Corp., 332 U.S. 194, 196 (1947)).

The ALJ did not sufficiently explain his decision to discredit the portion of Dr. Sharma's opinion limiting plaintiff to two hours of standing and six hours of sitting per day.

### 4. The Error Was Not Harmless

An ALJ error is harmless if it "was inconsequential to the ultimate nondisability determination." Stout, 454 F.3d at 1055. The Ninth Circuit has clarified that the "relevant inquiry…is not whether the ALJ would have made a different decision absent any error…it is whether the ALJ's decision remains legally valid, despite such error." Carmickle v. Comm'r of Soc. Sec. Admin, 533 F.3d 1155, 1162 (9th Cir. 2008). Multiple reasons for a particular conclusion can render an error in one harmless because the others provide "a basis for the court to review the ALJ's decision[.]" Id. at 1163; see also Lambert v. Saul, 980 F.3d 1266, 1278 (9th Cir. 2020) (refusing to find an error harmless when "the ALJ did not provide enough 'reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence[.]'") (internal citations omitted).

The ALJ has failed to adequately explain why he discounted a medical opinion limiting how much plaintiff can sit or stand. As plaintiff notes, a VE admitted that what jobs plaintiff can perform would change if Dr. Sharma's opinion on this matter were fully credited. AR 75-76. The error was not harmless.

### B. The ALJ Did Not Err in Discounting the Effect of Methamphetamine Abuse

### 1. Opinions and ALJ Holding

In March 2016, Dr. Julian Lev found that plaintiff's substance addiction disorder was non-severe and listed its priority as "other". AR 86-97. Dr. Lev found that while this disorder was present, it did not precisely satisfy the "'A' Criteria" in Appendix I. AR 86. He did not discuss how Paragraph B or C criteria applied to the disorder. AR 87. He did find that plaintiff had "mild" limitations in both activities of daily living and maintaining concentration, persistence or pace, but "moderate" limitations in maintaining social functioning. AR 87.

Dr. Lev's notes include plaintiff testing positive for THC, methylamphetamine, and benzodiazepines on December 18, 2015, based on drug use four days prior. AR 87. Dr. Lev

11

admitted he could not say whether plaintiff's Drug Addiction and Alcoholism ("DAA") influenced the results of a September 11, 2013 examination. AR 87. Plaintiff did not use any drugs between December 14, 2015 and another examination on February 25, 2016. AR 87.

In a March 2016 writeup of his overall findings, Dr. Lev observed a general pattern of moderate impairments since 2013, like hyperactive and tangential speech and an elevated tearful mood. AR 86. He noted that the documented methamphetamine and THC use would "clearly" exacerbate these symptoms, and admitted he could not determine what plaintiff's functional limitations would be without such drugs. AR 86. He concluded that plaintiff had moderate limitations with her current drug use but could likely perform simple work without it. AR 86.

In July 2016, Dr. Joseph Leizer again labeled plaintiff's substance addiction disorder as non-severe and "other" priority. AR 104-105. He also determined it did not precisely satisfy the "'A' Criteria", nor did he discuss it in terms of B or C criteria. AR 105. Like Dr. Lev, he found "mild" limitations in both activities of daily living and maintaining concentration, persistence or pace, but "moderate" limitations in maintaining social functioning. AR 105.

Plaintiff's treating psychiatrist, Dr. Saba Rizvi, also submitted multiple statements regarding plaintiff's mental state and the effect of drug use on it. On September 27, 2017, for example, he reported treating her for Dependent Personality Disorder ("DPD") and miscellaneous stimulant abuse with stimulant-induced anxiety disorder, coded as F60.7 and F15.180 respectively. AR 562, 566. Dr. Rizvi categorized plaintiff's chemical dependency as "active" and found it impossible to separate its effects from her other mental impairments. AR 563, 567.[3]

Exactly one year later, on September 27, 2018, Dr. Rizvi wrote that plaintiff suffered from "significant anxiety and mood changes leading to various dysfunctions in her life" like being unable to leave home. AR 1167. He reported that although she had "treated herself with different substances", she was "free of any drugs recently" aside from prescription medication. AR 1167. Plaintiff reportedly lacked the coping skills needed to handle life stressors like losing her mother and her job at the same time, and Dr. Rizvi concluded she was not mentally stable enough for

---

[3] The ALJ's decision falsely states that Dr. Rizvi reported the chemical dependency was in remission. AR 704.

work at the time. AR 1167.

The ALJ listed methamphetamine addiction as one of plaintiff's severe impairments at step two of the analysis. AR 696. As part of the RFC determination, the ALJ noted that plaintiff admitted during the February 2018 hearing that she last used methamphetamine about eight months prior. AR 701-02. The ALJ found that plaintiff's condition improved in the absence of drug use. AR 702. Treatment notes from both March and May 2018, for example, noted a positive response to prescription medication and diagnosed her with "polysubstance dependence, rule out anxiety disorder and depression, meth induced mood and anxiety changes and dependent and dependent and histrionic traits." AR 702. In both October 2018 and September 2020, when plaintiff reported only marijuana use, she was calm and cooperative without any suicidal ideation. AR 702.

Based on these reports, the ALJ concluded that plaintiff's condition was not disabling in the absence of methamphetamine's acute effects. AR 703. The ALJ noted that some of plaintiff's mental problems were attributed to specific stressors like losing her job and her mother. AR 703. Plaintiff would also periodically stop taking medication designed to treat her psychiatric conditions, despite her symptoms improving when she did comply. AR 703. The ALJ determined that in the absence of methamphetamine-induced symptoms, plaintiff could "perform simple, routine and repetitive tasks and…occasionally interact with supervisors, coworkers and the public." AR 703.

The ALJ also used the 2018 treatment notes to discount Dr. Rizvi's opinion. AR 704. To the extent that Dr. Rizvi said in September 2017 that plaintiff's dependency was in remission, this conflicted with the October 2017 diagnosis of "polysubstance dependence and methamphetamine induced mood and anxiety changes." AR 704. Meanwhile, Dr. Rizvi's September 2018 assertion that plaintiff was still not stable enough for work was a conclusory statement on an issue reserved to the ALJ's judgment. AR 704. The ALJ contrasted this opinion against the "substantial improvement" in plaintiff's mental status since March 2018, including observations of only mild or moderate anxiety in May and October 2018. AR 704.

As for Dr. Lev and Dr. Lazier, the ALJ noted that both doctors observed "mild"

limitations in daily functioning and in maintaining concentration, persistence, and pace, along with "moderate" limitations affecting plaintiff's "ability to maintain adequate social functioning." AR 705. Both doctors acknowledged plaintiff's "methamphetamine, marijuana, and benzodiazepine use without prescription." AR 705. The ALJ credited their findings to the extent that they limited plaintiff to simple tasks involving only occasional interactions with coworkers, supervisors and the public. AR 705. The ALJ did not, however, limit plaintiff to low-stress environments as Dr. Lev and Dr. Lazier recommended. AR 705. The ALJ reasoned that neither opinion had the benefit of reviewing subsequent medical evidence, including evidence that plaintiff's mental status stabilizes whenever she is not abusing methamphetamine. AR 705.

### 2. Governing Legal Principles

If there is medical evidence of DAA, the ALJ shall determine whether such addiction is a contributing factor material to the determination of disability. 20 C.F.R. § 404.1535(a). The operative question is whether the ALJ would still find the plaintiff disabled if she were to stop using the drugs at issue. 20 C.F.R. § 404.1535(b)(1). In other words, after conducting the five-step analysis without separating the impact of substance abuse from other symptoms, the ALJ will determine which of the current physical and mental limitations would remain in the absence of such drug use. 20 C.F.R. § 404.1535(b)(2). Whether the remaining limitations would be disabling determines whether the drug addiction is a contributing factor material to the current disability determination. Id.

### 3. Ambiguity in the Medical Record Favors a Finding of Materiality

Plaintiff argues that the evidence shows significant mental impairment even when she abstained from methamphetamine use. ECF No. 16 at 22. For example, treatment notes from December 31, 2015 and July 21, 2016 list plaintiff's last methamphetamine use as December 14, 2015. ECF No. 16 at 22; AR 536, 654. Despite abstinence during this period, her Global Assessment of Functioning ("GAF") never rose above 48 during this period, which is still indicative of serious symptoms and impairment in everyday functioning. ECF No. 16 at 22 (citing 538, 542, 654, 659, 672, 699). Even at the time of highest GAF in March 2016, Dr. Nancy Nelson noted that plaintiff was distraught and tearful, alternated between hyperventilating and

holding her breath, and reported waking up at night crying about her parents or the loss of her job. ECF No. 16 at 22; AR 671-72.

Plaintiff further argues that when Dr. Rizvi began treating her in August 2016, she assigned a GAF score of 45 and continued to do so through May 2018. ECF No. 16 at 22 (citing AR 650, 1216, 1219, 1223, 1226, 1229, 1233, 1240, 1244, 1247, 1250, 1253). Given the exact match between visits, whether Dr. Rizvi rediagnosed plaintiff each time or just copied her DSM-IV information from the initial visit is unclear. In any case, plaintiff began using drugs again shortly after she began seeing Dr. Rizvi. ECF No. 16 at 22-23; AR 642. Even after she quit again in early 2017, plaintiff continued to demonstrate poor insight and judgment, anxious mood and affect, and a circumstantial thought process through May 2018. ECF No. 16 at 23 (citing AR 608, 612, 618-19, 621, 1246, 1252, 1254).

Plaintiff concludes that taken as a whole, this treatment record does not clearly indicate that her mental functioning improved to the point where she could work. ECF No. 16 at 24. To the extent that her condition did improve, the ALJ cannot definitively attribute this to methamphetamine abstention as opposed to other factors, like an increase in plaintiff's anti-psychotic prescription. Id. at 24-25. Citing Parra v. Astrue, plaintiff argues that when a medical or psychological consultant cannot project what limitations would remain were a claimant to stop using drugs, DAA is not material to any disability determination. Id. at 24 (quoting 481 F.3d 742, 749 n.5 (9th Cir. 2007)).

Plaintiff misquotes Parra in a way that misrepresents the burden of proof. The plaintiff in that case did cite internal agency documents from 1996 that authorize a finding of materiality "only when the evidence establishes that the individual would not be disabled if he/she stopped using drugs/alcohol." Parra, 481 F.3d at 749, n.5. The Ninth Circuit rejected this argument, however, because it "effectively shifts the burden to the Commissioner to prove materiality." Id. at 749. It further noted that this would undermine the purpose of the Contract with America Advancement Act, "to discourage alcohol and drug abuse, or at least not to encourage it with a permanent government subsidy." Id. at 749-50 (quoting Ball v. Massanari, 254 F.3d 817, 824 (9th Cir. 2001)). The reverse rule is more consistent with the general principle that the burden of

15

establishing disability and entitlement to benefits rests with the plaintiff. See Parra, 481 F.3d at 748 (quoting Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998)).

Plaintiff bears the burden of proof through an ALJ's RFC determination, including on whether her DAA should affect any finding of disability. See supra IV; 20 C.F.R. §§ 404.1512(a); Bowen, 482 U.S. at 146 n.5. Any ambiguity in the medical record favors finding that plaintiff's methamphetamine addition was material to her mental impairment.

### 4. The ALJ's Final Determination Did Not Need to Mirror a Medical Opinion

Plaintiff notes that because both Dr. Lev and Dr. Lazier found her substance addiction was nonsevere, neither one discussed whether it was material to her RFC. ECF No. 16 at 21 (citing AR 86-87, 104-06). If true, this would make Dr. Rizvi's assessment of plaintiff's DAA the only assessment in the record. Plaintiff argues that by rejecting Dr. Rizvi's opinion, the ALJ improperly based the RFC on his own lay interpretation of the evidence. ECF No. 16 at 21.

One of the state agency psychologists did discuss the materiality of plaintiff's substance abuse. Dr. Lev noted that plaintiff's methamphetamine and THC abuse likely exacerbated plaintiff's mental impairments. AR 86. He even admitted that he could not determine what plaintiff's functional limitations would be without such drug use. AR 86-87.

In any case, plaintiff's citations fail to demonstrate that the ALJ exceeded his authority by interpreting medical evidence himself. Plaintiff first argues that under Social Security Ruling ("SSR") 13-2p, state agency examiners are who determine whether DAA is material to a finding of disability "[a]t the initial and reconsideration levels". ECF No. 16 at 20-21; SSR 13-2p at 13(a). Plaintiff ignores, however, that "the ALJ or Appeals Council" makes this determination when the Appeals Council makes the ultimate disability determination. SSR 13-2p at 13(c). The SSR also reaffirms that when the DAA affects those with co-occurring mental disorders rather than solely physical ones, as here, an ALJ must assume DAA is immaterial to a disability finding unless the record establishes otherwise. SSR 13-2p at 7(d); Parra, 481 F.3d at 749-50. Critically, an ALJ cannot "rely exclusively on medical expertise" to find that DAA is material. SSR 13-2p at 7(b). An ALJ is not prohibited from independently assessing whether the medical evidence establishes the DAA's materiality; in such cases, he is required to exercise such judgment.

16

This is also consistent with the general assumption, both before and after 2017, that ALJs are somewhat "capable of independently reviewing and forming conclusions about medical evidence to discharge their statutory duty to determine whether a claimant is disabled and cannot work." Farlow v. Kijakazi, 53 F.4th 485, 488 (9th Cir. 2022). This assumption is embedded in the standard of review for medical opinions in pre-2017 applications, insofar as an ALJ can reject nonexamining opinions "by reference to specific evidence in the medical record." Id. (quoting Sousa v. Callahan, 143 F.3d 1240, 1244 (9th Cir. 1998)).

Plaintiff cites Rohan v. Chater, in which the Seventh Circuit held that ALJs cannot "succumb to the temptation to play doctor and make their own independent medical findings." ECF No. 16 at 21; 98 F.3d 966, 970 (7th Cir. 1996). Although Rohan is not binding on this court, plaintiff argues that some district courts in the Ninth Circuit have favorably cited this opinion when rejecting an ALJ's assessment of the medical evidence. ECF No. 16 at 21 (citing Vaughn v. Berryhill, 242 F.Supp.3d 998, 1008-09 (E.D. Cal. 2017); Banks v. Barnhart, 434 F. Supp. 2d 800, 805 (C.D. Cal. 2006)).

Although the court in Banks acknowledged Rohan, it then reaffirmed the ALJ's authority to reconcile any conflict between pieces of medical evidence. 434 F. Supp. 2d at 805 (citing Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003); Batson v. Commissioner of the Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004)). Accordingly, where at least one medical opinion found that the plaintiff could perform any medium work without limitation, the ALJ had substantial evidence to support an RFC of medium work with some environmental limitations. Banks, 434 F. Supp. 2d at 805-06.

The remaining published authority concerns situations that are distinguishable from the current facts. "Without expressly relying on *any medical evidence* or authority," for example, the ALJ in Rohan decided that the plaintiff's operation of a small business was inherently incompatible with both an official depression diagnosis and a treating physician's opinion. 98 F.3d at 970 (emphasis added). Meanwhile, the ALJ in Vaughn failed to provide specific and legitimate reasons for rejecting the opinions of treating physicians, instead citing nonexamining opinions that predated most of the medical evidence in the record. 242 F.Supp.3d at 1008.

17

Neither case suggests that an ALJ cannot discredit a medical opinion, even from a treating source, if the ALJ believes that medical evidence conflicts with the opinion.

If the reasons for rejecting Dr. Rizvi's testimony are legally adequate, the ALJ's decision is not invalid solely due to the lack of a supporting medical opinion.

### 5. The ALJ Did Not Err in Discounting Dr. Rizvi's Opinion

Plaintiff first argues that the ALJ mischaracterizes as conclusory Dr. Rizvi's assertion that plaintiff was "not stable enough to deal with work" as of September 2018. ECF No. 16 at 25; AR 704, 1167. She cites Hill v. Astrue, where the Ninth Circuit held that a medical "assessment, based on objective medical evidence, of [plaintiff's] *likelihood* of being able to sustain full time employment" should have been considered. ECF No. 16 at 25 (citing 698 F.3d 1153, 1059-60 (9th Cir. 2012)). It rejected the argument that because an individual's ability to work is an issue reserved to the Commissioner, a doctor's opinion on this issue is not binding. Hill, 698 F.3d at 1160 (citing 20 C.F.R. § 404.1527(d)(1)).

Plaintiff's argument, however, ignores the distinction the Ninth Circuit drew between a medical opinion and a conclusory statement. The regulations specifically ask an ALJ to ignore "[a] statement by a medical source that" a claimant is "'disabled' or 'unable to work'". 20 C.F.R. § 404.1527(d)(1). The Ninth Circuit contrasted this against a medical opinion that found "*sustained full time competitive employment unlikely*" based on the "combination of mental and medical problems" at issue. Hill, 698 F.3d at 1159 (emphasis original). Dr. Rizvi, meanwhile, outright concluded that plaintiff could not work as of the September 2018 letter. AR 1167. Her opinion does exactly what the Ninth Circuit credited the psychiatrist in Hill for not doing.

Plaintiff then cites Ryan v. Comm'r of Soc. Sec. to argue that the ALJ cannot discount Dr. Rizvi's opinion based solely on signs of improvement in the medical record from March 2018 thereafter. ECF No. 16 at 25-26 (citing 528 F.3d 1194, 1200-01 (9th Cir. 2008)). Plaintiff emphasizes the Ninth Circuit's warning that a treating physician's opinion "must be read in context of the overall diagnostic picture he draws" with the understanding that "some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace." ECF No. 16 at 26. The court finds Ryan to be inapposite. Although it

18

concerned an ALJ's assessment of medical opinion evidence regarding mental impairments, Ryan did not present the question whether DAA affected the plaintiff's condition. For the same reason, the undersigned is unpersuaded by plaintiff's citation to Garrison v. Colvin to argue that an ALJ cannot discount a psychiatric opinion unless another expert has opined that the claimant's condition has sufficiently improved. See ECF No. 16 at 26 (citing 759 F.3d 995, 1017-18 (9th Cir. 2014)).

As discussed above, plaintiff bears the burden of proof in showing that she still would not be able to work in the absence of her drug abuse. She has not done so. The ALJ provided legally sufficient reasons for discounting Dr. Rizvi's opinion even in the absence of a contrary medical opinion.

      6.  Conclusion

Plaintiff has failed to identify error in the ALJ's finding that but for her drug abuse, plaintiff's mental condition would not have been disabling during the relevant time period. The ALJ need not revisit this issue upon remand.

      C.  Remand

The undersigned agrees with plaintiff that the ALJ's error regarding Dr. Sharma's assessment of physical limitations is harmful and remand for further proceedings by the Commissioner is necessary. An error is harmful when it has some consequence on the ultimate non-disability determination. Stout, 454 F.3d at 1055. The ALJ failed to sufficiently justify the rejection of Dr. Sharma's limitations on how long plaintiff can sit or stand. This may result in a more restrictive RFC assessment, and the VE admitted this would affect what jobs plaintiff can perform. The error was harmful.

It is for the ALJ to determine in the first instance whether plaintiff has severe impairments and, ultimately, whether she is disabled under the Act. See Marsh v. Colvin, 792 F.3d 1170, 1173 (9th Cir. 2015) ("the decision on disability rests with the ALJ and the Commissioner of the Social Security Administration in the first instance, not with a district court"). "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004).

The credit-as-true rule authorizes remand with instructions to calculate and award benefits if:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Garrison, 759 F.3d at 1020.  The rule does not preclude further proceedings if "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." Id. at 1021.

Plaintiff argues that enhancement of the record would not be useful because once the ALJ fully credits Dr. Sharma's opinion, he would have to find plaintiff disabled during the disputed period based on physical impairments alone.  ECF No. 23 at 3.  Whether the ALJ does need to credit the disputed portion of Dr. Sharma's opinion is unclear.  As discussed above, the ALJ's error mostly lies in his failure to adequately articulate the reason for his rejection of Dr. Sharma's limitations on how long plaintiff can stand or sit.  See supra VI.A.3.  Defendant has articulated a reason the ALJ might do so, even if it currently constitutes impermissible *post hoc* rationale.  See id.; Molina, 674 F.3d at 1121.  The ALJ should be given the opportunity to decide whether he will continue to discount Dr. Sharma's opinion, and to fully explain why.  The court finds that the credit-as-true rule does not apply here, and that remand is the appropriate remedy.

## VII.  CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 16) is GRANTED;

2. The Commissioner's cross-motion for summary judgment (ECF No. 22) is DENIED;

3. This matter is REMANDED to the Commissioner for further consideration consistent with this order; and

4. The Clerk of the Court shall enter judgment for the plaintiff and close this case.

DATED: September 24, 2025

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE